SO ORDERED.

SIGNED this 26 day of July, 2012.

_____
Randy D. Doub
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| IN RE: | |
| LUTHER WHITFIELD BATEMAN, JR., | CHAPTER 7 |
| | CASE NO. 10-06206-8-RDD |
| DEBTOR | |
| GEORGE M. OLIVER, TRUSTEE, | ADVERSARY PROCEEDING |
| | NUMBER: 11-00397-8-RDD |
| Plaintiff | |
| v. | |
| CAROL BATEMAN COOPER, | |
| LOUIS EUGENE BATEMAN, | |
| TIMOTHY ROSS BATEMAN, and | |
| ROBERT CHARLES BATEMAN, | |
| Defendants. | |

### ORDER GRANTING MOTION TO DISMISS ADVERSARY PROCEEDING

Pending before the Court is the Motion to Dismiss Amended Complaint (the "Motion") filed by Carol Bateman Cooper and Timothy Ross Bateman (the "Movants") on May 14, 2012, and the Response to Motion to Dismiss Amended Complaint (the "Response") filed by George M. Oliver,

Chapter 7 Trustee (the "Trustee") on June 4, 2012. On June 21, 2012, the Court conducted a hearing on the Motion and the Response in New Bern, North Carolina.

## BACKGROUND

Luther Whitfield Bateman, Jr. (The "Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on August 4, 2010. On September 2, 2004, the Debtor purchased real property described as 106 Sanderlin Road, Shawboro, North Carolina (the "Property"). On September 26, 2008, the Debtor transferred his interest in the Property by North Carolina General Warranty Deed to Carol Bateman Cooper, Timothy Ross Bateman, Louis Eugene Bateman, and Robert Charles Bateman (collectively hereinafter referred to as the "Defendants"). The Debtor retained a life estate in the Property "for and during the term of his life, or until such time as he shall cease to reside at the same for a period of twenty-four (24) months." On Schedule A of the petition, the Debtor valued his interest in the Property at $186,000.00. Schedule D lists a mortgage on the Property held by Guardian Federal Credit Union ("Guardian Federal") in the amount of $15,395.99.

The Trustee commenced this adversary proceeding against the Defendants on December 30, 2011, with the filing of the Complaint for Avoidance and Recovery of Fraudulent Transfer (the "Complaint"). In the Complaint, the Trustee sought to avoid and recover fraudulent transfers relating to the transfer of the Debtor's Property to the Defendants pursuant to 11 U.S.C. § 548, N.C. Gen. Stat. § 39-23.4, and 11 U.S.C. §§ 501 and 551. Specifically, the Trustee alleged that the Defendants, who are the children of the Debtor, are insiders and paid little or no consideration to the Debtor for the transfer of his interest in the property.

On January 30, 2012, the Movants filed a Motion to Dismiss, requesting the Court dismiss the Trustee's Complaint for failure to state a claim upon which relief may be granted pursuant to

2

Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding by Federal Rule Bankruptcy Procedure 7012(b).  The Court conducted a hearing on the Movants' Motion to Dismiss Complaint on March 14, 2012, in Wilson, North Carolina.  On April 2, 2012, the Court entered the Order Granting Motion to Dismiss Adversary Proceeding, Granting Oral Motion for Leave to Amend Complaint, and Setting Deadlines for Filing Amended Complaint and Responses Thereto (the "Order").  The Order granted the Movants' Motion to Dismiss upon finding that the Complaint failed to allege sufficient factual allegations as to the elements of a preference claim under 11 U.S.C. § 548, N.C. Gen. Stat. § 39-23.4, and 11 U.S.C. §§ 501 and 551.  The Order also granted the Trustee's oral motion for leave to amend, and allowed the Trustee twenty-one (21) days in which to file an amended complaint.

On April 23, 2012, the Trustee filed the Amended Complaint for Avoidance and Recovery of Fraudulent Transfer (the "Amended Complaint").  The Amended Complaint also seeks to avoid the transfer of the Debtor's Property to the Defendants pursuant to 11 U.S.C. § 548, N.C. Gen. Stat. § 39-23.4, and 11 U.S.C. §§ 501 and 551.  The Trustee's Amended Complaint adds few facts that were not previously set forth in the Complaint.  Specifically, the Amended Complaint adds the following paragraphs:

> 11.  According to the Deed, the Debtor retained a life estate in the Property.
> 12.  The Debtor asserted on his Schedule C-1 that [he] was seventy eight (78) years of age as of the Petition date. . . .
> 14. Also listed on the Debtor's Schedule D and Schedule F are total liabilities of $75,559.33, consisting of $29,181.98 in secured claims and $44,377.35 in unsecured claims.
> 15. On Debtor's Schedule I is listed $3,562.40 in average monthly income versus $3,564.42 in average monthly expenditures listed on Schedule J, leaving a net of negative $2.02 per month.

> 16. Based on the approximate market value of the Property and the amount of the mortgage to Guardian Federal, as listed on the Debtor's schedules, equity existed in the Property of approximately $170,604.01 on the Petition Date.
> 17. As a result of the transfer of the property, the Debtor was left insolvent, owing, at minimum, a mortgage to Guardian Federal, which the Debtor would have been unable to meet as the obligation came due.

Amend. Compl. at 2, 3.

On June 4, 2012, the Movants filed the Motion, requesting the Court dismiss the Trustee's Amended Complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding by Federal Rule Bankruptcy Procedure 7012(b). The Movants contend that the Trustee fails to allege sufficient factual allegations to support a claim under 11 U.S.C. § 548 (a)(1)(B). Specifically, the Movants argue that as to the insolvency requirement the Trustee fails to provide any facts to show that all of the elements of § 548(a)(1)(B) were met; and that the Trustee merely makes the conclusory statement that "as a result of the transfer of the Property, the Debtor was left insolvent, owing, at a minimum, a mortgage to Guardian Federal, which the Debtor would have been unable to meet as the obligation came due." Movants further contend that the Trustee failed to "set forth any information as to the Debtor's financial status as of September 30, 2008 when the Deed was recorded or shortly thereafter."

In the Trustee's Response, the Trustee contends the "Amended Complaint sets forth factual allegations which demonstrate that upon the transfer of the Debtor's interest in the Property, the Debtor was left insolvent, owing, at minimum, a mortgage to Guardian Federal, which the Debtor would have been unable to meet as the obligation came due." The Trustee further contends that

these factual allegations establish sufficient facts to state a claim for relief that is plausible on its face.

## DISCUSSION

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). According to *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), there is a heightened pleading standard, and the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Angell v. Ber Care, Inc.* (*In re Caremerica, Inc.*) 409 B.R. 737, 745 (Bankr. E.D.N.C. July 23, 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed. 2d 929 (2007)). There are "two working principles" upon which the heightened pleading standard rests:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.

*Id.* at 747 (quoting *Iqbal*, at 1949).

Pursuant to 11 U.S.C. § 548(a)(1), the trustee may avoid fraudulent transfers of an interest of the debtor in property incurred within two years before the petition date. Section 548 provides in part:

> (a)(1) [t]he trustee may avoid any transfer . . . of an interest of the debtor in property, . . . that was made . . . on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . .
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (ii)(I) was insolvent on the date that such transfer was made . . . or became insolvent as a result of such transfer . . . .

To avoid a transfer under § 548, the debtor must be insolvent on the date that such transfer was made. *Callaway v. Novelli (In re Bouchard*) 09-06110-8-RDD, 2011 WL 110901 at *2 (Bankr. E.D.N.C. Jan. 12, 2011). Section 101(32)(A) provides that a debtor is insolvent when "the sum of such entity's debts is greater than all of such entity's property, at a fair valuation . . . ." *Ber Care, Inc.*, 409 B.R. at 745 (citing 11 U.S.C § 101(32)(A)). "Because a debtor must be insolvent on the date of the transfer, in order for the trustee to be successful in a claim based on § 547(b), it follows that the trustee must allege facts sufficient to show that such insolvency is plausible." *Id.* at 752. While the Trustee in this case does not seek to avoid a preference under § 547(b), the Court finds that the insolvency requirement of § 547(b)(3) and the insolvency requirement of § 548(a)(1)(B)(ii)(I) are substantively the same. Therefore, for the Trustee to be successful in this claim based on § 548(a)(1)(B), the Trustee must allege facts sufficient to show that the Debtor was insolvent on the date of the transfer. With this in mind, the plaintiff "bears the burden of proof on all essential elements of § 548(a)(1)(B)." *Warren v. Abreu (In re Skumpija)*, AP No. 11-00072-8-SWH, 2011 WL 5909263, at *2.

The Trustee's Amended Complaint alleges the Debtor "became insolvent as a result of the transfer of the Property to the Defendants." Although the Amended Complaint recites the elements of § 548(a)(1)(B), it fails to provide factual support of these allegations. According to *Warren v. Abreu*, a complaint under § 548(a)(1)(B) must allege a "fraudulent transfer, identif[y] the consideration alleged to have been received by the transfer, and identif[y] information concerning why plaintiff maintains the consideration was not reasonably equivalent in value, as well as sufficient facts regarding insolvency." *Warren*, 2011 WL 5909263, at *2 (citing *Ber Care, Inc.*, 409 B.R. at

6

756). The Amended Complaint alleges a fraudulent transfer occurred on September 26, 2008, that no consideration was given in exchange for the transfer, and that this did not equate to the reasonably equivalent value of the Property. The Amended Complaint recites the Debtor's assets and liabilities as indicated in his schedules dated August 4, 2010, but fails to provide a basis to find that the Debtor became insolvent as a result of the transfer on September 26, 2008, when the Deed was recorded, or shortly thereafter. In the Order dated April 2, 2012, this Court informed the Trustee that even if the Court were to take judicial notice of the Debtor's schedules, there would still not be sufficient facts to support the Debtor's insolvency on or about the date of transfer. The Court noted that the Debtor's assets and liabilities as indicated on the Schedules, nearly two years subsequent to the date of the transfer, cannot show that it is plausible the Debtor was insolvent on the date of the transfer, or became insolvent as a result of the transfer. As such, the Amended Complaint does not provide sufficient facts showing the Debtor's actual assets and liabilities as they existed on the date the Property was transferred, or shortly thereafter.

In this case, the Trustee asserts that the Debtor's interest in the Property has no value, and as such, the Debtor's debts were greater than all of the Debtor's assets at the time of the filing. To support this assertion, the Trustee's Amended Complaint lists the information found on the Debtor's bankruptcy schedules. The schedules filed in the Debtor's bankruptcy case indicate that as of the date of the petition, the Debtor's assets totaled approximately $200,675.00, including the approximate value of the Debtor's interest in the Property, $186,000.00, while the Debtor's liabilities totaled approximately $73,559.33. As for liabilities, the Debtor's schedules list approximately $29,181.98 in secured claims and approximately $44,377.35 in unsecured claims. The unsecured claims largely represent credit card debt. The Amended Complaint fails to provide factual allegations that the assets

7

were incorrectly valued on the Debtor's petition, or that these liabilities existed on or about September 26, 2008, the date of the transfer. In the April 2, 2012 Order, the Court also informed the Trustee that the Complaint failed to provide factual allegations to prove that the unsecured liabilities existed on or about September 26, 2008, the date of the transfer. The Court stated that in order to plead sufficient facts in regard to the essential element of insolvency, the Trustee must plead facts showing the Debtor's actual assets and liabilities on or about September 26, 2008. Because no facts are alleged to suggest that the assets in the Debtor's schedules were incorrectly valued, or that the assets and liabilities existed on the date of the transfer, the Amended Complaint fails on its face to state a claim for which relief may be granted under the *Twombly* and *Iqbal* pleading standards.[1]

At the hearing on the Motion, the Trustee asserted that the Debtor has no interest in the Property because the life estate terminated on or about September 26, 2008, the date the Property was transferred to the Defendants. The Trustee argued that the Debtor has never lived on the Property, but has only kept his belongings there. Therefore, the Trustee argued the Debtor's life estate was void as of the date of the transfer or soon thereafter, in accordance with the deed, which created a life estate in the Debtor and a remainder interest in the Defendants.[2] As such, the Trustee argued the Debtor's interest in the Property was $0.00, leaving him insolvent as he had no assets sufficiently valued to

---

[1] In the Amended Complaint the Trustee states "the Property had a market value of $186,000.00 as of the Petition Date." Amend. Compl. ¶ 10. The petition date was over a year and a half after the transfer date. As such, the Amended Complaint fails to reasonably allege the value of the Property at the time of the transfer.

[2] The deed transferring the Property created a life estate in favor of the Debtor, with interests transferred to the Defendants in the event that the Debtor failed to reside on the Property for a period of 24 months. Therefore, the life estate could not be void as of the date of the transfer because the deed creating the life estate requires the Debtor to not reside on the Property for 24 months. Thus, the life estate could not have been void at the date of transfer. The life estate could only have terminated at a minimum of 24 months after the date of transfer.

cover the mortgage to Guardian Federal. In the alternative, the Trustee argued that if the Debtor still had an interest in the Property as of the date of the petition, the Debtor's life estate would not be worth more than the $15,395.99 mortgage to Guardian Federal, thus leaving the Debtor insolvent. However, none of these facts argued by the Trustee were stated in the Amended Complaint.

Further, the Trustee failed to determine, and failed to allege, the value of the life estate, should it still be valid. Section 20.2031-7 of the Code of Federal Regulations states "the fair market value of . . . life estates . . . is the present value of such interests." 26 C.F.R § 20.2031-7(a). If the Debtor had retained an interest in the life estate at the time of the filing of the petition, the value of that interest would have been $38,353.20.[3] Even after factoring in the mortgage to Guardian Federal, the reasonable inference is that the Debtor had an unencumbered interest of $22,957.21 in his life estate at the time of the filing of the petition. The Trustee presents no facts in the Amended Complaint to support the claim that the life estate had no value at the time of the petition, or facts to prove that the Debtor never resided on the Property. If it were not for counsel's arguments at the hearing on the

---

[3] "The present value of the interest [in a life estate] is computed by multiplying the value of the property by the appropriate remainder interest actuarial factor (that corresponds to the applicable section 7250 interest rate . . . ) in Table S (for one measuring life) . . . ." 26 C.F.R. § 20.2037-7(d)(2)(ii). "For purposes of the computations . . . the age of an individual is the age of that individual at the individual's nearest birthday." 26 C.F.R. § 20.2031-7(d). The remainder interest actuarial factor is found under I.R.C. § 7520.

The value of the property at the time of the filing of the petition was $186,000.00. The age of the Debtor was 78 (the age of the Debtor at the Debtor's nearest birthday to the date of the present value was July 2010, as determined by the Debtor's date of birth, July 1932). The interest for August 2010 was 2.6%. Internal Revenue Service, www.irs.gov/business/small/article/0,,id=20493,00.html (last visited July 5, 2012). According to the Single Life Factors Table S, the remainder interest actuarial factor for a 78 year old at an interest rate of 2.6%, is 0.20620. *Id.* at www.irs.gov/retirement/article/0,,id=206601,00.html. The present value of the interest in the Debtor's life estate was then calculated as follows: $186,000.00 x 0.20620 = $38,353.20.

Motion, no party would be on notice of the Trustee's claims as to the value of the life estate in relation to the Debtor's insolvency. The Amended Complaint only states that "the Debtor was left insolvent, owing, at minimum, a mortgage to Guardian Federal, which the Debtor would have been unable to meet as the obligation became due." Amend. Compl. ¶ 17. The Court finds this to be a "conclusory statement [that] 'fail[s] to satisfy the requirements under *Iqbal*." *Groff v. JPMorgan Chase Bank, N.A.* (*In re Groff*), AP No. 11-00284-8-RDD, 2011 WL 6140744 at * 3 (Bankr. E.D.N.C. Dec. 9, 2011) (citing *Beaman v. Barth, et al. (In re Amerlink, Ltd.)*, AP No. 10-00164-8-JRL at 8 (Bankr. E.D.N.C. Mar. 11, 2011)).[4]

To be successful on the second claim for relief, under N.C. Gen. Stat. § 39-23.4(a), the Trustee must prove elements similar to those under 11 U.S.C. § 548. North Carolina has adopted the Uniform Fraudulent Transfer Act, which sets forth the requirements of a fraudulent conveyance. "Under the Uniform Fraudulent Transfer Act, a transfer is fraudulent if made without receiving reasonably equivalent value; and, the debtor was either engaged in a business transaction for which the remaining assets of the debtor were unreasonably small in relation to the transaction, or the debtor knew debt incurred was beyond the debtor's ability to pay." *Beaman v. Barth (In re Amerilink, LTD.),* AP No. 10-00164-8-JRL at 6 (citing N.C. Gen. Stat. § 39-23.4). North Carolina General Statute § 39-23.4 provides:

---

[4] In the Amended Complaint, the Trustee failed to allege facts regarding the small undivided interest in real property owned by the Debtor in Currituck County at the time of the transfer. This fact was brought to the attention of this Court in Movants' counsel's argument at the hearing on the first motion to dismiss on March 14, 2012. In the Response, the Trustee did express his belief that the Debtor's 1/126 undivided interest in the Currituck County real property did not possess any significant value. However, this was only after the Movants again brought the facts to the attention of this Court in the Motion.

>(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>(1) With intent to hinder, delay, or defraud any creditor of the debtor; or
>(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>a. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>b. Intended to incur, or believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

N.C. Gen. Stat. § 39-23.4(a). The requirement that the debtor know that the debt incurred was beyond the debtor's ability to repay, requires analysis similar to the insolvency requirement of § 548.

As to the second claim for relief, the Amended Complaint alleges:

>24. The Debtor became insolvent as a result of the transfer of the Property to the Defendants.
>25. The transfer of the Property to the Defendants represents a transfer by the Debtor to insiders.
>26. The Debtor received less than the reasonable equivalent value in exchange for the Property and as a result debts were incurred, such as the mortgage to Guardian Federal, beyond the Debtor's ability to pay as they became due.

Amend. Compl. at 3. The Trustee's only change to the second claim for relief in the Amended Complaint, was the removal of the assertion that the "transfer of the Property was intended to hinder, delay, or defraud creditors." Compl. ¶ 19. Just as the Amended Complaint failed to plead sufficient facts as to the Debtor's insolvency under § 548, the Amended Complaint also fails to support the conclusion that the Debtor was insolvent under N.C. Gen. Stat. § 39-23.4.

"To fully satisfy N.C. Gen. Stat. § 39-23.4, the plaintiff must . . . show that the transaction left the debtor under capitalized." *Beaman*, AP No. 10-00164-8-JRL at 10. As discussed above, the Amended Complaint contains no additional information to allege sufficient facts to draw a reasonable

11

inference that the Debtor was insolvent on the date of the transfer or became insolvent as a result of the transfer. The allegation that the transfer caused the Debtor to become insolvent on the date of the transfer, or shortly thereafter, is insufficient, without facts as to the Debtor's financial situation, to support the conclusion that the Debtor was left under capitalized. Accordingly, the allegations made with respect to N.C. Gen. Stat. § 39-23.4 fail to satisfy the pleading requirements of Fed. R. Civ. Pro. 8(a).

The Trustee's third cause of action under 11 U.S.C. §§ 550 and 551 is contingent upon the success of either the first or second cause of action. If a transfer is avoided under § 548, the trustee may recover such property, from "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550. Pursuant to 11 U.S.C. § 551, a transfer avoided under § 548, is automatically "preserved for the benefit of the estate." 11 U.S.C. § 551. The Trustee added no additional information to the third cause of action in the Amended Complaint. Therefore, because the Court finds the Trustee has failed to provide sufficient facts to support the Trustee's actions under 11 U.S.C. § 548 and N.C. Gen. Stat. § 39-23.4, the Trustee's third cause of action is also dismissed.

"The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, No. 11-1796, 2012 WL 2589229, at *3 (4th Cir. July 5, 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Because the Court finds the Amended Complaint fails to allege sufficient factual allegations to support the conclusions alleged as to the elements of a preference claim under 11 U.S.C. § 548, N.C. Gen. Stat. § 39-23.4, and 11 U.S.C. §§ 550 and 551, the Motion to Dismiss the Adversary Proceeding is **GRANTED**. The Plaintiff, having now had two opportunities to allege sufficient facts

to state a claim for relief that is plausible on its face, and having now failed to do so twice, this adversary proceeding is **DISMISSED**, with prejudice.

**SO ORDERED.**

**END OF DOCUMENT**